IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Michael T. Lomauro, | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No.** |
| | ) | |
| v. | ) | 2:21-CV-241-RWS-JCF |
| | ) | |
| Corrugated Replacements, Inc., | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

COMES NOW, Michael T. Lomauro ("Mr. Lomauro" or "Plaintiff"), and brings this *Complaint* against the above-named Defendant as follows:

### Nature of the Action

1. This is an action for damages brought pursuant to the Families First Coronavirus Response Act ("FFCRA").

2. The evidence will show that Defendant Corrugated Replacements, Inc. ("Corrugated" or "Defendant"), through its agents and officials, terminated Mr. Lomauro and denied him protected leave in violation of the FFCRA.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter, which arises under federal law, pursuant to 28 U.S.C. § 1331.

4.      This Court has personal jurisdiction over Defendant because the violations of Plaintiff's rights alleged herein were committed in this division of this judicial district.

5.      Venue is proper in this Court pursuant to 29. U.S.C. § 1391, because the violations of Plaintiff's rights alleged herein were committed in this division of this judicial district.

## PARTIES

6.      Plaintiff Lomauro is a former employee of Defendant Corrugated. Mr. Lomauro is a citizen of the United States who submits himself to the jurisdiction of this Court.

7.      Defendant Corrugated is a domestic profit corporation that conducts business in the State of Georgia. It may be served with the summons and complaint by personal service on its registered agent, whose office is located at 161 Lee Industrial Drive, Blairsville, Georgia 30512.

## FACTUAL ALLEGATIONS

8.      Corrugated is a supply replacement parts company for machine manufacturers.

9.      Mr. Lomauro started his employment with Corrugated on January 15, 2018. In his last position, Mr. Lomauro was a CNC Lathe Machinist.

10. On March 13, 2020, Defendant's president, Ms. Jenny Chandler ("Ms. Chandler") held a meeting to explain how the company would proceed through the COVID-19 pandemic.

11. Mr. Lomauro attended this meeting and understood that using contractual paid time off ("PTO") would be optional for employees taking COVID-related leave.

12. On March 19, 2020, Mr. Lomauro informed Gaby Miller ("Ms. Miller"), his production supervisor, of his possible exposure to COVID-19 from his wife and requested to self-quarantine. Shortly after the discussion, Ms. Miller informed Mr. Lomauro that his 14-day quarantine was approved, and he could begin on the following day.

13. Still on March 19, 2020, Ms. Chandler approached Mr. Lomauro at his workstation on the shop floor and instructed him to pack up his belongings and leave. Ms. Chandler informed Mr. Lomauro that he would have to use PTO for the two weeks of quarantine.

14. Mr. Lomauro was confused because Ms. Chandler's statements to him on March 19, 2020, contradicted what she had announced at the March 13 meeting.

15. Nevertheless, Mr. Lomauro left his workplace and began self-quarantine.

16. On April 2, 2020, Mr. Lomauro contacted his production supervisor to inform Defendant of his wife's negative COVID-19 test results and to inquire about his return-to-work date. Mr. Lomauro was instructed to return to work on April 6, 2020.

17. On April 3, 2020, Mr. Lomauro discovered he was paid out of his PTO time for his 14-day quarantine. He contacted Kathy Brandenburg ("Ms. Brandenburg"), human resources manager, via email and later via phone call for clarification on Defendant's policies regarding employee absences.

18. On this phone call, Mr. Lomauro never raised his voice or displayed aggressive behavior. He only attempted to clarify his understanding of company policy. Mr. Lomauro and Ms. Brandenburg agreed to schedule an in-person meeting on April 6, 2020, so that she could have some time to review the employee handbook.

19. Concerned about his available remaining PTO, Mr. Lomauro specifically sought clarification on Defendant's attendance policy, on his own status as an "essential" or "non-essential" employee, and on whether his self-quarantine qualified as an excused absence.

20. Mr. Lomauro reported to work on April 6, 2020, and met with Ms. Brandenburg as planned. To his surprise, Ms. Chandler was also in attendance. Mr. Lomauro had intended to have a confidential meeting with only the human resources manager Ms. Brandenburg.

21. Neither Ms. Chandler nor Ms. Brandenburg provided Mr. Lomauro with the clarification he sought.

22. During the meeting, Mr. Lomauro also explained to Ms. Chandler and Ms. Brandenburg that his five-year-old son's school had closed in response to the pandemic.

23. Mr. Lomauro further explained that his wife had to work, that she was working "from home" but frequently had to leave the house and would be unavailable to supervise their son and one-year-old daughter.

24. Mr. Lomauro's mother-in-law, who usually cared for Mr. Lomauro's infant daughter, was also unavailable because she was busy with a different grandchild who was also out of school because of a COVID closure.

25. Accordingly, Mr. Lomauro provided Ms. Chandler and Ms. Brandenburg a hand-written request for leave to tend to his children, who could not be left home alone all day.

26. At the end of this April 6 meeting, Mr. Lomauro was instructed to return to work on the shop floor. He had not been given any reason to suspect he was in danger of discipline.

27. Shortly afterwards, Bob Lee, the company owner, approached Mr. Lomauro's machine at his workstation, instructed him to leave, and told him he would receive documents from the Department of Labor. Mr. Lomauro left the premises.

28. On April 7, 2020, Mr. Lomauro received an email from Ms. Brandenburg requesting a statement from him that he is the only suitable parent to care for his children and requesting contact information for his wife's employer.

29. Mr. Lomauro promptly provided all requested information.

30. The next correspondence Corrugated sent Mr. Lomauro was a letter of termination on the following day, April 8, 2020.

31. At no point in this series of events did Corrugated inform Mr. Lomauro of his rights under the FFCRA, including his right to request leave or an accommodation for an alternative work schedule.

## SUBSTANTIVE CLAIMS

### Violation of the Families First Coronavirus Response Act

32. By this reference, Mr. Lomauro incorporates his factual allegations as if fully set forth herein.

33. Division E of the FFCRA, the Emergency Paid Sick Leave Act, entitles employees to take up to two weeks of paid sick leave for specific reasons related to COVID-19.

34. Division C of the FFCRA, the Emergency Family and Medical Leave Expansion Act, which amends Title I of the Family and Medical Leave Act, entitles employees to take up to twelve weeks of expanded family and medical leave, ten of which are paid, for specific reasons related to COVID-19.

35. One such reason is when an eligible employee is unable to work because the employee's child's school or place of care is closed, or the child's childcare provider is unavailable, because of COVID-19.

36. As described above, Mr. Lomauro was the only person available to take care of his five-year-old son because of COVID-related school closures and his wife's frequent work-related travel.

37. As described above, Corrugated was aware of Mr. Lomauro's wife's demanding responsibilities and his son's school's closure.

38. Nevertheless, Corrugated terminated Mr. Lomauro because of his need and request for leave, violating the FFCRA.

39. Corrugated did not attempt to accommodate Mr. Lomauro's protected need to care for his son, such as by offering him an alternative work schedule, also violating the FFCRA.

40. Corrugated failed to inform Mr. Lomauro of his right to take protected leave to care for his son, further violating the FFCRA.

41. Upon information and belief, Defendant's violations of Mr. Lomauro's FFCRA rights were willful or, in the alternative, carried out with deliberate indifference to his rights.

42. Mr. Lomauro is entitled to recover all economic losses caused by Defendant's interference with his FFCRA rights, in addition to liquidated damages, interest, and reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a) That a trial by jury be had on all issues for which a jury trial is permitted under law;

b) That damages be awarded against Defendant to compensate the Plaintiff for the injuries suffered as a consequence of Defendant's actions in an amount to be determined by the enlightened conscious of the jury;

c) That liquidated damages be awarded against Defendant;

d)     That attorney's fees and expenses of litigation be awarded to Plaintiff;

e)     That equitable relief, including reinstatement, or front pay in lieu thereof, be awarded to Plaintiff;

f)     That pre-judgment and post-judgment interest be awarded; and

g)     That the Court award such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, this November 12, 2021.

*/s/ James Radford*
James Radford
Georgia Bar No. 108007
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com

*Attorney for Plaintiff*